UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
HARRY CARLTON WILEY and
VIRGINIA RUTH WILEY,
    Debtors.                                               No. 7-07-13053 SL

**MEMORANDUM OPINION ON TRUSTEE'S
MOTION TO COMPROMISE UNDER RULE 9019**

This matter came before the Court to consider the Trustee's Motion to Approve Compromise under Rule 9019 (doc 50). The Trustee appeared through his attorney Moore, Berkson & Gandarilla (George Moore and Bonnie Gandarilla). Objecting creditor Tru-Value Company appeared through its attorney Rodey, Dickason, Sloan, Akin & Robb, P.A. (James Askew and Charles Hughson). For the reasons set forth below, the Court finds that the Motion should be denied without prejudice. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

**FACTS**

Harry Wiley and Virginia Wiley filed a voluntary Chapter 7 petition on December 3, 2007. Philip Montoya was appointed as Trustee ("Trustee"). On October 8, 2008, Trustee filed an adversary proceeding against a bank and several relatives and related businesses to recover preferential and fraudulent transfers and for declaratory relief (98-1120, doc 1). Trustee amended the complaint on March 10, 2009 to correct the identity of two defendants. (98-1120, doc 11) Sometime thereafter the Trustee and the Defendants engaged in a settlement conference. On April 30, 2009 the bank was dismissed without prejudice so

that the preference action could be litigated in a separate adversary proceeding (98-1120, doc 23). On May 22, 2009 Trustee filed the Motion to Approve Compromise under Rule 9019 (doc 50). Under the terms of the compromise, defendants would pay to the Trustee $180,000 within one year, or $160,000 if paid within six months, to be secured by a first mortgage on real estate owned by the Charles Hayden Wiley and Elnora Williams Wiley Revocable Trust ("Wiley Trust"). In return, the Trustee would dismiss the adversary with prejudice but would retain all claims he has, if any, against HRW of Las Cruces, Inc. ("HRW LC"). Tru-Value Company, which holds approximately 94% of the unsecured claims, objected (doc 52). Tru-Value claims that the Trustee has not obtained appraisals or other opinions of value of HRW Family, LLC or the Wiley Trust and therefore has no rational basis for exercising his business judgment to settle the claims. It also argues that the four creditors with timely proofs of claim were not consulted on the mediation or on the terms of the settlement.

**THE COMPLAINT**

The complaint identifies the defendants[1] as: the Debtors, HRW LC (a corporation wholly owned by Debtors, per Schedule B), Virginia Oxford (Debtors' daughter), Robert Wiley (Debtors' son), HRW Family, LLC (no ownership interest listed on Schedule B, but

---

[1] Because the bank was dismissed, all references to the bank and claims against it (i.e., Count 2) are omitted from this opinion.

the complaint alleges that Debtor Harry C. Wiley is the sole managing member), the Wiley Trust (the complaint alleges this trust was created in 1988), and Oxford Investments, LLC (no ownership interest listed on Schedule B, but the complaint alleges that Virginia Oxford is the agent).

Count 1 seeks to recover a fraudulent transfer to HRW Family, LLC or, alternatively, a declaration of ownership of property held by the LLC. Trustee alleges that, within two years of the bankruptcy filing, Debtors gave 50% of HRW Family, LLC to each of their children Virginia Oxford and Robert Wiley with the intent to hinder, delay or defraud creditors or for less than reasonably equivalent value at a time when they were insolvent or caused to become so by the transfer, or were engaged in a business or transaction or about to engage in a business or transaction for which their remaining property was unreasonably small capital, or at a time when the Debtors intended to incur or believed they would incur debts that would be beyond their ability to pay as the debts matured. The complaint lists various assets that HRW Family, LLC owns. No net value is ascribed to the HRW Family, LLC interests; presumably the Trustee is unaware of the value of assets owned by or extent of debts owed by the entity. Alternatively, the complaint alleges that HRW Family, LLC is a passive holding entity and the equivalent of a grantor trust. And, alternatively, Plaintiff seeks to step into the

shoes of the managing member of HRW Family, LLC. Plaintiff seeks judgment on Count 1 as follows: 1) avoiding the transfer of 100% of the interests in HRW Family, LLC; 2) for orders to Virginia Oxford and Robert Wiley to turn over the assets of HRW Family, LLC to Plaintiff; 3) for a money judgment against Virginia Oxford for the value of fifty percent of the assets in the LLC; 4) for a money judgment against Robert Wiley for the value of fifty percent of the assets in the LLC; and 5) for a declaration that the assets of HRW Family, LLC are property of the estate.

Count 3 seeks to recover a fraudulent transfer to Oxford Investments, LLC. Trustee alleges that, within 30 days of the bankruptcy filing the Debtors transferred substantial assets of HRW LC to Oxford Investments, LLC for $8,000 down and $171,009 to be paid over fifteen years at 8% interest per annum, with the intent to hinder, delay or defraud creditors or for less than reasonably equivalent value at a time when they were insolvent or caused to become so by the transfer, or were engaged in a business or transaction or about to engage in a business or transaction for which their remaining property was unreasonably small capital, or at a time when the Debtors intended to incur or believed they would incur debts that would be beyond their ability to pay as the debts matured. Plaintiff seeks judgment on Count 3 as follows: 1) a judgment avoiding the transfer by Debtors of their interests in HRW LC; 2) an order directing

Page -4-

Oxford Investments, LLC to turn over the assets of HRW LC to Plaintiff, 3) for a money judgment against Oxford Investments, LLC for the value of HRW LC's assets, and 4) for a declaration that the HRW LC assets are property of the estate.

Count 4 seeks to collect a debt from the Wiley Trust[2]. The complaint alleges that Debtors guaranteed a debt of the Wiley Trust to Farm Credit of New Mexico and then paid the loan in full in the amount of $307,639. Therefore, Plaintiff claims that Debtors are subrogated to Farm Credit of New Mexico and are due $307,639 from the Wiley Trust. Plaintiff seeks judgment on Count 4 for either a turnover of the $307,639 or a money judgment in that amount.

Count 5 seeks to recover a fraudulent transfer from the Wiley Trust. Using the same facts as set forth in Count 4, Plaintiff seeks a judgment that the $307,639 was a fraudulent transfer for the benefit of the Wiley Trust.

Count 6 seeks a determination that the Wiley Trust is part of Debtors' bankruptcy estate. It lists various assets believed to be owned by the trust and certain expenditures from the trust. The key allegations, however, are 1) that Debtor Harry C. Wiley is a trustee and a beneficiary of the Wiley Trust and has had and continues to have unregulated dominion and control over the

---

[2] Count 4 also seeks a turnover of nonexempt property from the Debtors in the amount of $3,488.

Page -5-

corpus of the Wiley Trust; and 2) that the Wiley Trust is the equivalent of a grantor trust. Count 6 seeks a declaration that the Wiley Trust is property of the bankruptcy estate and an order to turnover the Wiley Trust assets to Plaintiff.

**DISCUSSION**

Settlements in bankruptcy are governed by Federal Rule of Bankruptcy Procedure 9019(a), which states:

> (a) Compromise
> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Rule 9019 does not state the standards under which the Bankruptcy Court approves the compromise or settlement. Therefore, Courts have devised various tests over the years to determine whether a settlement is in the best interests of the estate and creditors. For example, in <u>Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424-25 (1968), the United States Supreme Court stated:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance,

Case 07-13053-trc7    Doc 67    Filed 03/11/10    Entered 03/11/10 10:24:50 Page 6 of 14

of course, is the need to compare the terms of the
compromise with the likely rewards of litigation.

Another example is the test adopted by the Second Circuit in
In re Iridium Operating LLC, 478 F.3d 452, 462 (2nd Cir. 2007):

> (i) the balance between the litigation's possibility of
> success and the settlement's future benefits;
> (ii) the likelihood of complex and protracted
> litigation, with its attendant expense, inconvenience,
> and delay, including the difficulty in collecting on
> the judgment;
> (iii) the paramount interest of the creditors,
> including each affected class' relative benefits, and
> the degree to which creditors do not object to or
> affirmatively support the proposed settlement;
> (iv) whether other parties in interest support the
> settlement;
> (v) the competence and experience of counsel supporting
> the settlement; and
> (vi) the extent to which the settlement is the product
> of arm's length bargaining.

In re Stone Barn Manhattan, LLC, 405 B.R. 68, 75 (Bankr. S.D.
N.Y. 2009).

Yet another example is the test set forth in In re Jackson
Brewing Co., 624 F.2d 599, 602 (5th Cir. 1980):

> [The bankruptcy judge] must evaluate and set forth in a
> comprehensible fashion:
> (1) The probability of success in the litigation, with
> due consideration for the uncertainty in fact and law,
> (2) The complexity and likely duration of the
> litigation and any attendant expense, inconvenience and
> delay, and
> (3) All other factors bearing on the wisdom of the
> compromise.

(Citation omitted). The Fifth Circuit expanded upon this test in
Connecticut General Life Ins. Co. v. United Companies Financial
Corp. (In re Foster Mortgage Corp.), 68 F.3d 914, 917 (5th Cir.

Page -7-

1995)("While this Circuit has not elaborated on the 'other factors bearing on the wisdom of the compromise', we do so now. One such factor [is] ... the paramount interest of creditors with proper deference to their reasonable views.")(citing Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929)) and 918 ("Another factor bearing on the wisdom of the compromise at hand is the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.")(Citations omitted.)

In In re Kopexa Realty Venture Co., 213 B.R. 1020, 1022 (10th Cir. BAP 1997) the Bankruptcy Appellate Panel for the Tenth Circuit adopted a four part test derived from Trailer Ferry for evaluating the circumstances of a proposed compromise: (1) the chance of success of the litigation on the merits; (2) possible problems in collecting the judgment; (3) the expense and complexity of the litigation; and (4) the interest of the creditors. Korngold v. Loyd (In re Southern Medical Arts Co., Inc.), 343 B.R. 250, 256 (10th Cir. BAP 2006).

Any decision to approve a settlement must be an informed one based upon an objective evaluation of developed facts. Reiss v. Hagmann, 881 F.2d 890, 892 (10th Cir. 1989). The Court does not substitute its own judgment for that of the Trustee. In re 110 Beaver Street Partnership, 244 B.R. 185, 187 (Bankr. D. Mass. 2000). Nor is it sufficient for the Court to rely solely on the

trustee's business judgment; rather, the Court must take evidence and make its own findings of fact and conclusions of law. Kopexa Realty, 213 B.R. at 1023-24 (remanding the case for findings and conclusions.) See also LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.), 841 F.2d 159, 162 (7th Cir. 1987)(The bankruptcy judge "may not simply accept the trustee's word that the settlement is reasonable, nor may he merely 'rubber stamp' the trustee's proposal.") A mini-trial is not required; instead the Court must "canvas the issues" raised by the parties. Stone Barn, 405 B.R. at 75 (quoting Cosoff v. Rodman (In re W.T. Grant Co.), 669 F.2d 599, 608 (2nd Cir.), cert. denied, 464 U.S. 822 (1983)). See also Official Committee of Unsecured Creditors v. Cajun Electric Power Cooperative, Inc. (In re Cajun Electric Power Cooperative, Inc.), 119 F.3d 349, 356 (5th Cir. 1997)("[I]t is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.") Finally, a Trustee seeking approval of a compromise bears the burden of establishing that the factors support a finding that it is in the best interest of the estate. In re High Tech Packaging, Inc., 397 B.R. 369, 372 (Bankr. N.D. Ohio 2008); In re Roqumore, 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008); 110 Beaver Street Partnership, 244 B.R. at 187.

The settlement presented to the Court proposes that all counts and claims among and between the parties will be settled

(except for any claims against HRW LC, which are not involved in this adversary proceeding in any event). It is an all or nothing proposition. The Court has reviewed the presentations of the parties, reviewed the exhibits, consulted its notes, and researched the applicable authorities, and cannot find that it has sufficient information on whether to approve the compromise or not. Plaintiff's attorney argued that the issue is one of the Trustee's business judgment, and presented the case in that light. However, as discussed above, the Court must undertake an independent review of that business decision. Plaintiff's attorney also argued that the burden shifted to the objectors to demonstrate that the Trustee had missed assets. Also as discussed above, the burden remained with the Trustee.

On direct testimony, the Trustee testified that the overall expected success of the case was "ambiguous." He did not place a value on Count 1, 3 or 6[3]. Regarding Count 6, the Trustee stated that his conclusion, as well as the mediator's, was that Count 6 would be an uphill battle. On cross examination, Tru-Value elicited testimony from the Trustee that there was a possible amendment to the complaint for commercial real property transferred to Oxford, LLC which he had been informed was worth

---

[3] In all fairness to Trustee and his counsel, it would have been impossible at this stage of the proceedings for Trustee to be fully aware of the extent of net assets in HRW Family, LLC or the Wiley Trust.

Page -10-

Case 07-13053-trc7    Doc 67    Filed 03/11/10    Entered 03/11/10 10:24:50    Page 10 of 14

$60,000 to $75,000. This claim would be settled by the compromise. On cross, the Trustee also testified that at the mediation, he believed the value of the assets recoverable was $260,000 plus any equity in an apartment building. He now believed that there was little or no equity in any of the assets. He believed Count 3 had little value because the defendant had massive debt. He did not remember how he came to know this. He also testified that after reviewing Count 4 and 5 regarding the Farm Credit Loan, he believed it had a value of maybe $10,000. On cross, he also testified that he had discounted Count 6 to zero.

Trustee's attorney Bonnie Gandarilla also testified. She testified mainly regarding the legal obstacles with Count 6[4]. She did not, however, estimate a probability of success or suggest a possible recovery amount.

Neither the Trustee or his attorney testified about the value of Count 4 or 5, the subrogation or fraudulent transfer actions against the Wiley Trust regarding payoff of the Farm Credit Loan. Without conducting a mini-trial, the Court finds that the legal theories involved are plausible[5] and the facts

---

[4] In its written submission, Tru-Value supplied various theories under which the Trust might have some liability under Count 6. The Court does not need to address these issues because it already finds that the Trustee has not met his burden.

[5] See In re Flores of New Mexico, Inc., 134 B.R. 433, 437
(continued...)

Case 07-13053-trc7    Doc 67    Filed 03/11/10    Entered 03/11/10 10:24:50 Page 11 of 14

susceptible to rather easy proof.  Cf. Reiss, 881 F.2d at 892 ("Had the [bankruptcy] court properly evaluated the bankruptcy trustee's chances of reaching the assets in the Reiss Trust to pay the bona fide debts of the bankruptcy estate, it surely would have evaluated those chances of success at nearly one hundred percent.")  The Court also gathers that, of all the defendants in this case, the Wiley Trust appears the most solvent.  If the Trustee could collect $307,639 from the Trust and recover the commercial building, the estate would be better off not accepting this compromise.

In summary, the Court has been unable to determine the strengths and weaknesses of the various claims as a whole.  The Trustee has not sufficiently addressed the Kopexa Realty factors for the Court to find that settlement is in the best interests of the estate.

As a final note, Kopexa Realty requires the Court to consider the interests of the creditors.  "[T]he interests of the

---

[5](...continued)
(Bankr. D. N.M. 1991)( "The familiar rule is that, instanter upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes." Putnam v. Commissioner, 352 U.S. 82, 85 (1956)); State Farm Mut. Auto. Ins. Co. v. Foundation Reserve Ins. Co., 78 N.M. 359, 363, 431 P.2d 737, 741 (1967)(" The remedy [of subrogation] is for the benefit of one secondarily liable who has paid the debt of another and to whom in equity and good conscience should be assigned the rights and remedies of the original creditor.")(Citation omitted.)

creditors–and their perspectives on a proposed settlement are of critical importance." In re Vazquez, 325 B.R. 30, 37 (Bankr. S.D. Fla. 2005). No case holds that the creditors have an absolute "veto power." Id. Instead, the court should consider the creditors' reasonable views. Id. (citing Foster Mortgage, 68 F.3d at 917.) In this case, the single creditor holding 94% of the unsecured claims objected and represented to the Court that neither it or any of the other three creditors with claims were consulted regarding the mediation or proposed settlement. In other words, the only support for this settlement is found in the Trustee and his attorneys. Under these facts, the Court finds that it should require rather strict compliance with the Kopexa Realty factors to approve the settlement. See also Foster Mortgage, 68 F.3d at 918:

> Our concern is that the courts below gave no consideration to issues we find dispositive: that nearly all creditors in interest opposed this settlement and that the settlement was reached between insiders without the participation of the creditors. In our estimation, the court abused its discretion by not showing proper deference to the views of the creditors.

An Order will be entered denying the motion without prejudice.

/s/ James S. Starzynski

Honorable James S. Starzynski
United States Bankruptcy Judge

Page -13-

Date Entered on Docket: March 11, 2010

Copies to:

Bonnie Bassan Gandarilla
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

Donald Provencio
1721 Carlisle Blvd NE
Albuquerque, NM 87110-5621

Charles R. Hughson
Rodey, Dickason, Sloan, Akin & Robb, P.A
P.O. Box 1888
Albuquerque, NM 87103-1888

Samuel Herman Simon
Houston Harbaugh, PC
Three Gateway Center
401 Liberty Ave, 22nd Floor
Pittsburgh, PA 15222