UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
HARRY CARLTON WILEY and
VIRGINIA RUTH WILEY,
        Debtors.                          No. 7-07-13053 SL

**MEMORANDUM OPINION ON TRUSTEE'S
AMENDED MOTION FOR ORDER APPROVING
<u>COMPROMISE OF CONTROVERSY</u>**

        This matter came before the Court for final hearing on the
Trustee's Amended Motion for Order Approving Compromise of
Controversy.  The Trustee appeared through his attorney Moore,
Berkson & Gandarilla (Bonnie Gandarilla).  Objecting creditor
True Value Company appeared through its attorney Rodey, Dickason,
Sloan, Akin & Robb, P.A. (Robert St. John and Charles Hughson).
For the reasons set forth below, the Court finds that the Motion
should be granted.[1]

**<u>HISTORY OF THIS CONTESTED MATTER</u>**

        Harry Wiley and Virginia Wiley filed a voluntary Chapter 7
petition on December 3, 2007.  Philip Montoya was appointed as
Trustee ("Trustee").  On October 8, 2008, Trustee filed an
adversary proceeding against a bank and several relatives and
related businesses to recover preferential and fraudulent
transfers and for declaratory relief (08-1120, doc 1).  Trustee

---

        [1]The Court has subject matter and personal jurisdiction
pursuant to 28 U.S.C. §§ 1334 and 157(b); this is a core
proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O); and
these are findings of fact and conclusions of law as may be
required by Rule 7052 F.R.B.P.

amended the complaint on March 10, 2009 to correct the identity
of two defendants[2]. (08-1120, doc 11) Sometime thereafter the
Trustee and the Defendants engaged in a settlement conference.
On April 30, 2009 Count 2 against the bank was dismissed without
prejudice so that the preference action could be litigated in a
separate adversary proceeding (08-1120, doc 23). On May 22, 2009
Trustee filed the Motion to Approve Compromise under Rule 9019
(doc 50). Under the terms of the compromise, defendants would
pay $180,000 to the Trustee within one year, or $160,000 if paid
within six months, to be secured by a first mortgage on real
estate owned by the Charles Hayden Wiley and Elnora Williams
Wiley Revocable Trust ("Wiley Trust"). In return, Plaintiff
would dismiss the adversary with prejudice but would retain all
claims he has, if any, against HRW of Las Cruces, Inc. True
Value Company, which holds approximately 94% of the unsecured
claims, objected (doc 52). True Value claims that the Trustee
has not obtained appraisals or other opinions of value of HRW
Family, LLC or the Wiley Trust and therefore has no rational

---

[2]The amended complaint contained six counts: 1) to recover a
fraudulent transfer of the interests in HRW Family, LLC to
Virginia Oxford and Robert Wiley, or alternatively, to determine
ownership of property and recover it for the estate; 2) to
recover a preferential transfer against a bank; 3) to recover a
fraudulent transfer to Oxford Investments, LLC; 4) for turnover
and debt and money due against Debtors and the Wiley Trust; 5) to
recover a fraudulent transfer to the Wiley Trust; and 6) for a
declaration that the Wiley Trust's assets are property of the
estate.

Page -2-

basis for exercising his business judgment to settle the claims. It also argues that the four creditors with timely proofs of claim were not consulted on the mediation or on the terms of the settlement.

After a final hearing on the Motion to Compromise, this Court entered a Memorandum Opinion on March 11, 2010 that applied the four part test adopted by the Bankruptcy Appellate Panel for the Tenth Circuit in In re Kopexa Realty Venture Co., 213 B.R. 1020, 1022 (10th Cir. BAP 1997) and ruled that the Trustee had not sufficiently addressed the elements of the test[3]. In re Wiley, 2010 WL 964082 at *5 (Bankr. D. N.M. 2010). The Court then denied the Motion without prejudice. Id.

In October, 2010 the Court entered 1) a Memorandum Opinion and Order denying a Motion to Dismiss Count 6 by Virginia Oxford and Robert Wiley (Docs 26, 27); and 2) a Memorandum Opinion and Order Granting (in part[4]) a Motion for summary judgment on Counts 4 and 5 by Virginia Oxford and Robert Wiley (Docs 28, 29). Therefore, only Counts 1, 3 and 6 remain (plus that part of Count 4 for the Debtors' nonexempt cash).

---

[3]The Memorandum Opinion is incorporated herein and its facts and reasoning will not be repeated.

[4]The Court dismissed the claims against the movants, but left standing a demand for turnover of $3,377.58 of non-exempt funds in one of Debtors' bank accounts.

Page -3-

After the Court denied the motion to compromise, the Trustee
and the Defendants entered into an amended settlement agreement
and the Trustee sought Court approval.  (Doc 70).  The settlement
provides for payment of $200,000 within one year of closing, or
$180,000 if paid within six months, with 6% interest.  The
agreement is secured by a first mortgage on certain acres owned
by the Wiley Trust.  In exchange, the Trustee would release all
disclosed claims.  HRW of Las Cruces is not a party and would not
be released from anything.  The parties agree that the Trustee
owns all stock in HRW of Las Cruces.

     True Value objected.  (Doc 72).

**<u>STIPULATED FACTS</u>**

     The parties stipulated to the following facts (doc 94):

1.   In 1996 Hayden's Hardware Center Inc. transferred its assets
in the form of a hardware store known as "Hayden's Hardware" to
HRW of Las Cruces, Inc. After the transfer, Hayden's Hardware
Center Inc. continued in existence as, inter alia, a manager of
HRW of New Mexico, Inc., HRW of Las Cruces, Inc., HRW of Texas,
Inc., HRW of Zaragosa, Inc. and HRW of El Paso, Inc.

2.   The Debtors and their businesses ceased making payments to
True Value. True Value sued Debtors and their businesses in 2001
to recover the debt owed. In that state-court lawsuit the Debtors
denied they owed the debt, asserted affirmative defenses, and
brought counterclaims against True Value for damages to them and

Case 07-13053-trc7    Doc 112    Filed 12/26/12    Entered 12/26/12 14:06:54 Page 4 of 22

their businesses allegedly in the millions of dollars. True Value successfully litigated that case through trial and obtained a judgment against Debtors and their businesses in December 2006 in the principal amount of $587,127.32 plus prejudgment interest in the amount of $553,894.31 and attorneys fees in the amount of $373,513.99, for a total of $1,514,535.62 with statutory interest on the judgment accruing at 9% per annum.

3.    In September 1997, Harry Wiley filed articles of organization for HRW Family LLC and obtained from the Office of the State Corporation Commission for the State of New Mexico a certificate of organization for that entity. Debtors jointly owned 100% of HRW Family LLC at formation.

4. In 1998 Harry Wiley transferred into HRW Family LLC a Piper PA 18-150 aircraft, a 1975 Cessna A185 F aircraft; a 1995 Peterbilt 379 semi truck, and various storage van trailers.

5. On or about July 20, 2006, in order to receive proceeds from the sale of the Piper PA 18-150 aircraft, which HRW Family LLC then owned, a bank account in the name of HRW Family, LLC. was opened at First NM Bank.

6. On or about July 25, 2006, HRW Family LLC sold the Piper PA 18-150 aircraft to a third party for $81,000, which proceeds were deposited into the First NM Bank account for HRW Family LLC.

7.   The Debtors allege that they transferred their interest in HRW Family, LLC. by gift to their children, Virginia Oxford and Robert Wiley, by transfer of an interest of $9999 each year for each of the six years from 1998 through 2003 to each child.   No written record of such alleged transfers exists except for the Gift Valuation Transfer Forms that are undated; HRW Family LLC filed its first tax return in 2006.

8.   On the date of the filing of the petition, HRW Family, LLC. owned the following assets:

> A. One 1975 Cessna airplane currently valued at between $78,745 wholesale and $100,956 retail;

> B. One 1995 Peterbilt 379 semi truck that was sold for $18,500 in the 4th quarter of 2010;

> C. One 2001 Dodge Ram 2500 truck, in good condition, currently valued at $3,500;

> D. One 1985 Airstream travel trailer, in good condition, currently valued at $3,800;

> E. Nine storage van trailers and flat bed trailers, of which the 2008 Econohauler Trailer was sold in 2009 for approximately $7,000, and the 1990 Fruehauf flatbed trailer was sold for $3,000, and the remaining seven trailers are currently valued at $9,950;

9.   On the date of the filing of the petition, HRW Family, LLC. also had an interest in the balance of a loan owed by Oxford

Investments, LLC in the approximate amount of $2,348.50 on an original loan balance of $10,000 for 48 months.

10. After the filing of the petition, HRW Family LLC sold the 1995 Peterbilt 379 semi for $18,500, which proceeds are on deposit at First NM Bank.

11. The total assets of HRW Family, LLC are currently valued at approximately $126,843.50.

12. On or about February 28, 2003, the Debtors sold their commercial real estate in Canutillo, Texas for $760,000.

13. On or about May 13, 2005, Debtors sold their commercial real estate located at 3135 North Main in Las Cruces. This sale netted the Debtors $197,181.73.

14. On or about September 30, 2005, Debtors sold their commercial real estate located at 3111 N. Main in Las Cruces. This sale netted the Debtors $299,958.48.

15. On or about May 17, 2005, the Debtors deposited $100,000 of proceeds from the sale of their commercial real estate in downtown Las Cruces into an account at First New Mexico Bank ("FNMB")(certificate of deposit account number 82119130). Debtors pledged the FNMB CD, with a balance of $100,000, as collateral for a loan of $100,000 by First New Mexico Bank to Hayden's Hardware Center, Inc., HRW of New Mexico, Inc., HRW of Las Cruces, Inc., HRW of Texas, Inc., HRW of Zaragosa, Inc. and HRW of El Paso, Inc. (Loan No. 534901-67). As of May 17, 2005,

Case 07-13053-trc7    Doc 112    Filed 12/26/12    Entered 12/26/12 14:06:54 Page 7 of 22

only Hayden's Hardware Center, Inc. and HRW of Las Cruces, Inc. were in business.

16.  On or about May 17, 2005, FNMB also took a security interest in inventory, equipment, accounts, general intangibles, instruments and chattel paper as well as proceeds of the listed security owned by the corporate entities listed in the preceding paragraph above ("HRW Corporate Entities") as collateral for loan no. 534901-67.

17.  The term of loan 534901-67 from FNMB was on demand or no later than one year with quarterly interest payments.

18.  On or about May 18, 2006, FNMB agreed to a change in terms whereby loan 534901-67 was extended to May 18, 2007.  The interest rate was increased and the borrower agreed to make quarterly interest payments.  The security and collateral were unchanged.

19.  On or about July 10, 2006, FNMB agreed to a change in terms whereby loan 534901-67 was extended to July 10, 2007.  The interest rate was again increased.  The security previously pledged by the HRW Corporate Entities was unchanged.  The Debtors pledged a Merrill Lynch Account No. 198-10438 in the amount of $100,000 as collateral instead of the certificate of deposit that was pledged on May 17, 2005.

20. On or about [July] 18, 2006, First New Mexico Bank filed a UCC financing statement regarding the Merrill Lynch Account No. 198-10438.

21. On or about July 16, 2007, FNMB agreed to a change in terms whereby loan 534901-67 was extended to July 15, 2008.

22. Sometime between September 28, 2007 and December 3, 2007, loan no. 534901-67 was paid in full.

23. On or about November 23, 2007, HRW of Las Cruces conveyed inventory, fixtures and receivables to Oxford Investments, LLC. for a total of $179,008.76, with $8,000 down and $171,008.76 to be paid over 15 years at 8% interest per annum.

24. On November 30, 2007, HRW of Las Cruces filed a UCC-1 financing statement in which HRW of Las Cruces claimed a security interest in inventory, chattel, paper, accounts, equipment and general intangibles of Oxford Investments, LLC.

25. On November 21, 2007, the receivables of HRW of Las Cruces totaled $24,385.96.

26. On November 23, 2007, the date of the conveyance, the debts of HRW of Las Cruces included the judgment in favor of Truserve Corporation.

27. On November 23, 2007, the liabilities of HRW of Las Cruces exceeded the assets of HRW of Las Cruces.

28.  Oxford Investments, LLC. has been making payments of $1,634.25 per month into the HRW of Las Cruces, Inc. bank account, No. 8821 for a total of $56,990.55, which is the current balance of the bank account.

29.  True Value was offered the funds in the HRW of Las Cruces bank account and the promissory note in exchange for withdrawing its objection to this motion, but declined the offer.

30.  On or about February 9, 1998, Farm Credit of New Mexico made a loan to the Charles Hayden Wiley and Elnora Williams Wiley Revocable Trust ("Wiley Trust") and Debtors individually in the amount of $325,000. The loan was secured by a promissory note and a mortgage on real estate owned by the Wiley Trust.  The loan was payable over 30 years.

31.  A reserve account was established in which $118,534.02 of the loan proceeds were deposited and from which monthly payments against interest and principal on the Farm Credit Loan were made. Other deposits to and withdrawals from the reserve account were made over a period from June 1998 through April 2006.

32.  On or about February 28, 2003, the Debtors sold the building in Canutillo where the HRW of Texas, Inc. store was located for $760,000.

33.  On or about October 27, 2003, $57,700.65 of principal was paid on the Farm Credit loan.

34.  On or about October 28, 2003, $48,407.41 of principal was paid on the Farm Credit loan.

35.  On or about December 1, 2005, $135,426.31 of principal on the Farm Credit loan was paid from the reserve account.

36.  On or about April 28, 2006, the balance of the loan in the amount of $23,911.72 was paid by application of $3,142.00 from the reserve fund and a check from the Wiley Trust in the amount of $20,924.16.

37.  The Debtors reported the interest paid on the line of credit mortgage on their tax returns.

38.  The Wiley Trust was created in 1988.

39.  The Wiley Trust Grantors, the Debtor Harry Wiley's parents, Charles Hayden Wiley, died in 1994, and Elnora Williams Wiley, died on February 22, 2002.

40.  The Wiley Trust has an ownership interest in farmland, known as the "Wiley Farm," consisting of 77 acres of land, guns, vehicles, tractors and other farm equipment.  In addition, the Wiley Trust has an interest in a loan owed by Danny and Virginia Oxford in the approximate amount of $5,975.

41.  On or about April 25, 2006, Danny and Virginia Oxford borrowed $20,000 from the Wiley Trust.  The repayment terms of the loan were 84 monthly payments in the amount of $292.17 at 6% interest per annum, beginning May 15, 2006. Danny and Virginia

Oxford have made monthly payments on the loan. The current principal balance due is approximately $5,975.00.

42. On or about May 11, 2006, Danny and Virginia Oxford purchased apartments located at 819 Madero St. and 1404 Montana in Las Cruces, New Mexico on a real estate contract. The terms of the real estate contract provided for a purchase price of $285,000 with $20,000 down and the balance of $265,000 payable in monthly installments of $1,588.81 per month.

43. On or about November 20, 2008, Danny and Virginia Oxford assigned their interest in the real estate contract for the apartments to Oxford Rental Properties, LLC.

44. On or about December 15, 2006, the apartments at 819 Madero were sold, and on or about September 14, 2010, the apartments at 1404 Montana were sold.

45. Howard Dukes, a realtor with Coldwell Banker DeWetter Hovious, Inc. in Las Cruces, NM performed a market analysis of the Wiley Farm in which he determined that the land was worth between $590,139 to $788,520 with the outbuildings and homes valued at $350,000, for a total minimum value of $900,139.

46. On or about October 2005, Debtors sold an airplane hangar, and the proceeds in the amount of $75,000 were used to construct a building on the Wiley Farm that houses the 1975 Cessna A185, the 2001 Dodge Ram 2500, and 1985 Airstream travel trailer, and various other HRW Family LLC assets.

Page -12-

47.  In 2006, Hayden's Hardware Center Inc was doing business out of and had its office equipment located at 1414 S. Solano Dr., Las Cruces, NM.

48.  In 2006, Hayden's Hardware Center Inc gave its office equipment to HRW of Las Cruces, Inc, receiving no money in exchange.

49.  On or about June 1, 2006, Oxford Investments entered into a real estate contract for the purchase of 1414 S. Solano Dr. from the Debtors for $50,000. The purchase provided for a $20,000 deposit to be paid by Oxford Investments with the balance, including interest at 6% per year, to be paid in monthly installments over 30 years. In lieu of the $20,000 deposit, Debtors gave Danny and Virginia Oxford credit for work allegedly done by Danny and Virginia Oxford sometime in 2000 or 2001 on real property in Colorado owned by Debtors but where Danny and Virginia Oxford were then living rent free.

50.  Debtors then filed a voluntary petition under chapter 7 on December 3, 2007.

51.  On or about February 25, 2008, Debtors delivered a cashier's check to the Trustee herein in the amount of $29,600.93, which represented the pay off of the real estate contract for the purchase of real estate located at 1414 S. Solano, Las Cruces, NM by Oxford Investments, LLC.

52.  On or about March 25, 2008, Marcy Palmer, a realtor with Steinborn & Associates in Las Cruces, New Mexico, reported that a market analysis of the real property located at 1414 Solano had been performed by Grady Oxford, another realtor at Steinborn in August, 2007 and that the market value of the Solano property was $70,000 in August, 2007.

53.  The Wiley Trust owns a Honda Element that Virginia Wiley uses without paying rent.

54.  Harry Wiley is the only pilot in the Wiley family and the only one to ever fly the Family LLC's 1975 Cessna.  Harry Wiley never paid rent for his use of the Cessna.  Harry Wiley uses the Family LLC's 2005 Dodge Ram 2500 truck and pays no rent for this use.

## **EXHIBITS**

The parties stipulated to the authenticity of all of the exhibits (Trustee's Exhibits 1 through 43 and True Value's Exhibits 1 through 54) except Trustee's Exhibit 2.  The parties stipulated to the admissibility of all of the exhibits except the following: Trustee's Exhibit 2; True Value's Exhibits 10, 11, and 45-52.  (Doc 93).

At the final hearing, Trustee's Exhibit 2 was admitted by stipulation, as were True Value's 45-52.  True Value's Exhibits 10 and 11 were denied admission.  Trustee introduced an

Case 07-13053-trc7   Doc 112   Filed 12/26/12   Entered 12/26/12 14:06:54 Page 14 of 22

additional Exhibit 44 at the hearing, which was also admitted by stipulation.

True Value's Exhibit 9 is a transcript of the April 3, 2008 deposition of Debtor Harry Wiley. After the final hearing both the Trustee and True Value filed designations from the transcript. (Docs 98, 99). The Court reviewed all of the designated portions of the transcript.

## DISCUSSION

This was a difficult and close case. After reviewing the testimony, exhibits, and arguments the Court finds that the Trustee prevails by a preponderance of the evidence.

Specifically, True Value argues that the Trustee has not evaluated the net worth of HRW Family LLC or the Wiley Trust and has no basis for exercising his business judgment to settle claims 1 or 6. (¶ 10). After the filing of this objection, however, the parties filed the Stipulated Facts. Fact 11 states that the total assets of HRW Family LLC are $126,843.50. Fact 45 states an estimated value of the Wiley Trust's farm of between $900,000 and $1,100,000. The Trust also owns some older, low value vehicles, some loans to beneficiaries in an insignificant amount, and a gun collection worth $40,000 to $50,000[5].

---

[5]The collection has 15 to 20 guns with a value of $40,000 t0 $50,000. Wiley 2004 examination, True Value exhibit 9, p. 53, ll. 15-18 and p. 56, ll. 6-7.

Therefore, the Court finds that the Trustee has, in fact, evaluated the assets of HRW Family and the Trust.

True Value also objected to the settlement amount considering the possible assets of the entities listed above as well as the assets of Oxford Investments, LLC. The Trustee and the Court need not consider the assets of Oxford Investments because the only claim asserted against it could be to collect the note due from it. This claim is owned by HRW of Las Cruces, which is now in turn owned by the Trustee. Trustee believes that HRW of Las Cruces is insolvent. But, HRW of Las Cruces is not a party to the settlement and the Trustee can still attempt to collect that note after the settlement.

Paragraph 15 of True Value's objection is based on what appears to be settlement negotiations which took place between the Trustee, his attorneys, and True Value before the objection was filed. The Court should not consider settlement negotiations.

True Value also objected to the settlement on the grounds that the Trustee did not respond to a Motion for Partial Summary Judgment on Counts 4 and 5. Both the Trustee and his attorney testified at the final hearing that they simply had no documents or other evidence that could, in good faith, be filed to defeat the motion. The Court has also not seen any such evidence in the

Page -16-

record. And the Court on its own[6] examined that motion on its merits and concluded that the undisputed facts and the law justified entry of the partial summary judgment. (08-1120, doc 28.) The Court finds the explanation of Trustee and his counsel credible, and further finds there is no evidence before the Court that the dismissal of Counts 4 and 5 have had any adverse impact on the settlement or the motion to approve it.

Virginia Oxford and Robert Wiley filed a motion to dismiss Count 6, relating to assets in the Wiley Trust. The Court entered a Memorandum Opinion and Order denying that relief. (Docs 26, 27). True Value claims that this claim is still viable and worth large sums of money that the Trustee should pursue. However, the Court disagrees for several reasons.

First, the Memorandum Opinion stated that the Wiley Trust documents were not in evidence at that time. They now are. <u>See</u> Trustee Exhibit 24. The Court has thoroughly reviewed the Trust document. At page 5, ¶ 5.3(C) it states: "Under no circumstances may the child who is serving as Trustee make any disbursements

---

[6] Fed.R.Civ.P. 56(a) provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>See</u> <u>Champion v. Artuz</u>, 76 F.3d 483, 486 (2d Cir. 1996):

> The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically. Such a motion may properly be granted only if the facts as to which there is no genuine dispute "show that the moving party is entitled to a judgment as a matter of law."

Case 07-13053-trc7   Doc 112   Filed 12/26/12   Entered 12/26/12 14:06:54 Page 17 of 22

from Trust B to himself or herself or his or her descendants."

Then, at page 21, Article XV, "Spendthrift Provision", states in full as follows:

> Except as otherwise provided in this Agreement, no beneficiary may anticipate, assign, sell, or transfer any benefits to be derived under this trust and no assignment or order by way of anticipation of any part of the income or principal of this trust shall be valid, not shall such be accepted by the Trustee, and no beneficiary shall have the power to encumber or change his or her interest. In addition, no such beneficial interest, while in the possession of the Trustee, shall be liable for, or subject to, the debts, obligations, liabilities, torts, or contracts of any beneficiary. Moreover, all payments, whether of income or of principal, shall be made by the Trustee directly to the beneficiary, or for his or her benefit. The interest of any beneficiary in either the principal or income of this trust shall not be subject to the claims of any creditor of any such beneficiary, nor be subject to the attachment, garnishment, execution, or other legal or equitable process or lien brought by or in favor of any creditor. However, this clause shall not be construed as prohibiting disclaimers or assignments to lineal descendants.

Spendthrift trusts are governed by statute in New Mexico.

Section 46A-5-502 NMSA, **Spendthrift provision**, states:

> A. A spendthrift provision is valid only if it restrains both voluntary and involuntary transfer of a beneficiary's interest.
> B. A term of a trust providing that the interest of a beneficiary is held subject to a "spendthrift trust", or words of similar import, is sufficient to restrain both voluntary and involuntary transfer of the beneficiary's interest.
> C. A beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision and, except as otherwise provided in this article, a creditor or assignee of the beneficiary may not reach the interest or a distribution by the trustee before its receipt by the beneficiary.

Case 07-13053-trc7   Doc 112   Filed 12/26/12   Entered 12/26/12 14:06:54 Page 18 of 22

The Wiley Trust satisfies the requirements and is a valid spendthrift trust.

Second, the Memorandum Opinion cited the Restatement (Third) of Trusts, § 58 cmt.f (2003) for the proposition that any self-settled amounts in a spendthrift trust may not be immune from creditors. At this point, the record in this case has evidence that Mr. Wiley did not transfer any assets into the Wiley Trust. True Value Exhibit 9, p. 65, ll. 9-14. While evidence at trial might show otherwise, the Court does not conduct a mini-trial to determine if a case should settle. The issue is whether the Trustee has made a rational decision.

Third, the Memorandum Opinion recognized that in some situations a trust's assets may be property of a debtor's bankruptcy estate. (Doc 26, p. 8). True Value argues that Mr. Wiley had and has sole and absolute discretion over the trust. The Court disagrees that the evidence supports this broad statement. Virginia Oxford maintains the books and signs the checks for the trust. The bookkeeper also has signing authority on the checks. To date they may have allowed Mr. Wiley to use assets, but they are under no legal obligation to do so and there was no evidence that they would do so in the future. The Wiley 2004 examination was not completely clear about loans Mr. Wiley took. Either his mother lent him money, and the balance due became a trust asset upon her death, or possibly the trust loaned

Case 07-13053-trc7    Doc 112    Filed 12/26/12    Entered 12/26/12 14:06:54 Page 19 of 22

some money.  Most was repaid, with a balance remaining of $28,000 which presumably will be discharged if Mr. Wiley receives a discharge.  Mr. Wiley testified that he had not "received" money from the trust.  True Value, Exhibit 9, p. 65, ll. 15-16.

Again, whether Mr. Wiley actually exercised too much control is not the precise issue before the Court[7].  This is not a mini-trial.  Based on the evidence available the Court finds the Trustee's reasoning reasonable.

Finally, there was no evidence that the trust assets were so co-mingled with the Debtors that they would be untraceable.  The Trust has its own books and records and files its own tax returns.  Property is held in the Trust's name.

## CONCLUSION

The Court's earlier opinion on the Trustee's first motion to compromise the adversary proceeding set forth the elements that the Court must consider in ruling on this type of motion.  The

---

[7]Even if this were the issue, the Trustee would not necessarily get to recover the Wiley Trust's assets.  See Wetzel v. Regions Bank (In re Reagen), 649 F.3d 831, 836 (8th Cir. 2011) (Applying Arkansas Code § 28-73-502, which is identical to NMSA § 46A-5-502; both statutes are verbatim adoptions of the Uniform Trust Code § 502 (2000)).  In Reagen, the debtor was executrix of her late husband's estate as well as a beneficiary under a trust that contained a spendthrift provision.  She diverted assets from his probate to her own use instead of properly funding the trust of which she was beneficiary.  The Trustee attempted to include the trust in her bankruptcy estate.  The Eighth Circuit distinguished previous Arkansas cases and ruled that under § 502 the spendthrift provisions were still in effect because the terms of the trust itself did not give the beneficiary any power to change the terms of the trust.

Page -20-

Court has undertaken an independent review of the Trustee's business decision and finds that the Trustee provided the Court with sufficient information to understand his reasoning. The Trustee evaluated the strengths and weaknesses of both Count 1 and Count 6. He pointed out to the Court that Count 3 is not at issue; HRW of Las Cruces is not a party to the settlement and anything he can collect on account of his ownership of that entity will come into the estate. The settlement amount is more than the total net worth of the Wiley Family LLC. Even if the Trustee were successful in the lawsuit against the Debtors' children for fraudulent transfers, his recovery on Count 1 is less than the amount in the settlement. Therefore, the Trustee needs to prevail on both Counts 1 and 6. Everyone agrees that Count 6 would be an "uphill battle." The Court finds that the Trustee has exercised judgment such that the compromise of the adversary proceeding should be approved. The Court will enter an Order overruling True Value's objection and granting the Trustee's Motion.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

Date entered on docket: Dec 26, 2012

Case 07-13053-trc7   Doc 112   Filed 12/26/12   Entered 12/26/12 14:06:54 Page 21 of 22

Copies to:

Charles R. Hughson
Rodey, Dickason, Sloan, Akin & Robb, P.A
P.O. Box 1888
Albuquerque, NM 87103-1888

Robert St. John
Rodey, Dickason, Sloan, Akin & Robb, P.A
P.O. Box 1888
Albuquerque, NM 87103-1888

Bonnie Bassan Gandarilla
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

George M Moore
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

Michael K Daniels
PO Box 1640
Albuquerque, NM 87103-1640

Thomas Walker
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309